**TEXANA COMMUNITY MHMR CENTER, f/k/a Riceland Regional Mental Health Authority, Appellant,**

v.

**Linda J. SILVAS, Appellee.**

No. 13–01–435–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 2001.

---

1. Given our disposition of Issue No. One, we need not address Issue No. Two.

Kevin D. Jewell, Norman Ray Giles, William S. Helfand, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, for Appellant.

Troy D. Dunn, Spradlin & Spradlin, Houston, for Appellee.

Gregory A. Thompson, Attorney at Law, Houston, for Intervenor.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

HINOJOSA, Justice.

This is an interlocutory appeal from the trial court's order denying a plea to the jurisdiction filed by appellant, Texana Community MHMR Center, f/k/a Riceland Regional Mental Health Authority ("Texana"). In two issues, Texana contends the trial court erred in denying its plea to the jurisdiction because (1) appellee, Linda J. Silvas ("Silvas"), failed to adequately show she had complied with the notice provisions of the Texas Tort Claims Act ("TTCA"), and (2) Silvas failed to allege facts bringing her claim within the scope of the limited waiver of sovereign immunity under the TTCA. We reverse the trial court's order and grant Texana's plea to the jurisdiction.

### A. BACKGROUND

Silvas was employed by Best Carpet Care, an independent contractor hired by Texana to provide cleaning services. On October 19, 1998, Silvas was cleaning an office at Texana when she slipped on a puddle of water and fell, injuring her left knee. On October 19, 2000, Silvas sued

Texana for negligently allowing water to accumulate on the floor. Silvas alleged that a drain had been covered and water had accumulated when a shower was turned on.

Texana filed a plea to the jurisdiction, asserting the trial court lacked jurisdiction because Silvas had failed to (1) give notice as required under the TTCA, and (2) allege facts which would bring her claim within the scope of the waiver of liability provided in the TTCA. In her response to Texana's plea, Silvas claimed that actual notice had been given and that the affidavit of Ernest Lechuga established that fact. The response, however, did not include Lechuga's affidavit.

Texana also filed a motion for summary judgment asserting, *inter alia*, its jurisdictional arguments, and attached evidence in support of the motion. The trial court denied Texana's plea to the jurisdiction and motion for summary judgment.

### B. JURISDICTION

■ This Court has jurisdiction to review an appeal of an order granting or denying a plea to the jurisdiction by a "governmental unit" as defined in section 101.001 of the civil practices and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp.2001); TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (Vernon Supp.2001). We conclude we have jurisdiction to hear this appeal because it is undisputed that Texana is such a governmental unit.

### C. STANDARD OF REVIEW—PLEA TO THE JURISDICTION

■ We review a trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *Den-*

*ton County v. Howard*, 22 S.W.3d 113, 118 (Tex.App.-Fort Worth 2000, no pet.). A plea to the jurisdiction contests the authority of a court to determine the subject matter of the case. *Dolenz v. Tex. State Bd. of Med. Exam'rs*, 899 S.W.2d 809, 811 (Tex.App.-Austin 1995, no writ). The plaintiff bears the burden of alleging facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676 (Tex.App.-Corpus Christi 2001, no pet.); *El Paso Cmty. Partners v. B & G/Sunrise Joint Venture*, 24 S.W.3d 620, 623 (Tex.App.-Austin 2000, no pet.). A trial court must construe the plaintiff's pleadings liberally in favor of jurisdiction. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989).

■ A plea to the jurisdiction challenges the trial court's authority to hear a case by asserting that the factual allegations in the plaintiff's pleadings, when taken as true, fail to invoke the court's jurisdiction. *Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 331 S.W.2d 910, 917 (1960); *Mission Consol. Ind. Sch. Dist.*, 39 S.W.3d at 676; *El Paso Cmty. Partners*, 24 S.W.3d at 623. In a case brought under the TTCA, we must examine the plaintiff's pleadings to determine whether sovereign immunity has been waived. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex.1999)). To determine whether the plaintiff has affirmatively shown that the trial court has jurisdiction to hear the case, we consider the facts alleged by the plaintiff, and to the extent it is relevant to the jurisdictional issue, any evidence submitted by the parties. *Miller*, 51 S.W.3d at 587; *Tex. Natural Resource & Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *Tex.*

*Ass'n of Bus.*, 852 S.W.2d at 446. We must also consider any summary judgment evidence offered by the plaintiff in support of her jurisdictional argument. *Miller*, 51 S.W.3d at 587; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000).

### D. TTCA–WAIVER OF SOVEREIGN IMMUNITY

▆▆▆ Texas courts have long recognized that sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits for damages absent a legislative consent to sue. *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997); *Mount Pleasant Indep. Sch. Dist. v. Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989). Immunity from suit bars a suit against the State unless the State has expressly consented to the suit. *Id.* Legislative consent to sue must be by clear and unambiguous language, in either a statute or by other express legislative permission. *Jones*, 8 S.W.3d at 638; *Fed. Sign*, 951 S.W.2d at 405. Absent the State's consent to suit, a trial court lacks subject matter jurisdiction over a suit against a governmental unit. *Jones*, 8 S.W.3d at 638. Because immunity from suit defeats a trial court's subject matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Id.* at 638–39. To avoid dismissal for lack of subject matter jurisdiction, a plaintiff must fully comply with all the provisions of the TTCA. *See State v. Kreider*, 44 S.W.3d 258, 262 (Tex.App.-Fort Worth 2001, pet. denied); *Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 143 (Tex.App.-Dallas 1998, no pet.); *Lamar Univ. v. Doe*, 971 S.W.2d 191, 197 (Tex.App.-Beaumont 1998, no pet.).

Under the TTCA, a governmental unit is liable for "personal injury and death so caused by a condition of use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997). It is undisputed that Silvas's claims against Texana are subject to the limitations imposed by the TTCA. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176 (Tex.1994) (negligence claims fall under TTCA). Because Texana is a governmental unit, any such claim brought against it must be brought under the TTCA or the claim will be precluded by the doctrine of sovereign immunity. *See Benavides v. Dallas–Fort Worth Int'l Airport Bd.*, 946 S.W.2d 576, 578 (Tex. App.-Fort Worth 1997, no writ).

▆▆▆ Mere reference to the TTCA does not establish the State's consent to be sued, and thus, is not enough to confer jurisdiction on the trial court. *Miller*, 51 S.W.3d at 587. The TTCA provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain narrowly defined circumstances. *Id.; Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.1998). Therefore, we must first look to the terms of the TTCA to determine the scope of its waiver. *Miller*, 51 S.W.3d at 587; *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996). Then, we must consider the particular facts of the case before us to determine whether it comes within that scope. *Miller*, 51 S.W.3d at 587.

### E. SCOPE OF EVIDENTIARY REVIEW

The threshold issue here is the extent to which the trial court should look at the evidence in determining whether the plaintiff has invoked the TTCA waiver of sovereign immunity.

In support of the adequacy of her pleadings, Silvas cites *City of Houston v. La-*

*zell–Mosier,* 5 S.W.3d 887 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In that case, the plaintiffs sued the City of Houston over a collision between their vehicle and a city police vehicle. In their fourth amended petition, the plaintiffs alleged they had performed "[a]ll conditions precedent including compliance with § 101.101 of the TEX. CIV. PRAC. & REM. CODE; alternatively, the [City] had actual notice pursuant to TEX. CIV. PRAC. & REM. CODE § 101.101(c)." *Id.* at 891. The Fourteenth Court of Appeals held that this allegation "was factually sufficient to invoke the subject matter jurisdiction of the court with regard to the notice issue." *Id.*

We note the language used by Silvas is different than the language used by the plaintiffs in the *Lazell–Mosier* case. Silvas's language is more specific; it tracks the language derived from case law defining the requirements of actual notice. Under the *Lazell–Mosier* rationale, the language used by Silvas is sufficient to invoke the jurisdiction of the trial court, and the denial of the plea to the jurisdiction should be affirmed.

However, the Texas Supreme Court, in several opinions handed down after *Lazell–Mosier,* has expanded the scope of the trial court's review of evidence in a plea to the jurisdiction in a TTCA case. In *Miller,* 51 S.W.3d at 587, the supreme court, invoking its conflicts jurisdiction to review an interlocutory appeal, held that a court must examine not only the plaintiff's pleadings, but also any summary judgment evidence adduced by the plaintiff in support of her jurisdictional argument. *Id.* (quoting *Bland,* 34 S.W.3d at 555: "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so

when necessary to resolve the jurisdictional issues raised"). After reviewing the evidence, the supreme court concluded that the plaintiff had alleged only the "non-use" of tangible personal property, and thus, had not invoked the TTCA waiver. The supreme court reversed and granted the State's plea to the jurisdiction.

In *White,* 46 S.W.3d at 865, the supreme court, once again invoking its conflicts jurisdiction to review an interlocutory appeal, reversed and granted the State's plea to the jurisdiction. In doing so, it considered the "facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Id.* at 868 (citing *Bland,* 34 S.W.3d at 555 and *Tex. Ass'n of Bus.,* 852 S.W.2d at 446). It is not clear exactly what evidence the supreme court considered in making its determination. However, in rejecting one of the plaintiff's arguments, the court stated that the argument was "not supported by the factual allegations in the pleadings or by extrinsic evidence in the record." [1]

In *Bland,* 34 S.W.3d at 555 (Tex.2000), the supreme court stated:

> "In sum, a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue.... Accordingly, the trial court should have considered BISD's evidence in deciding its plea to the jurisdiction...."

*Id.* After reviewing the evidence, the supreme court reversed the judgment of the court of appeals upholding the trial court's

---

1. The court rejected this argument because it was raised by White for the first time in her appeal to the supreme court.

denial of the plea to the jurisdiction, and dismissed the action for want of jurisdiction. *Id.* at 558.

 It is quite clear from these cases that the trial court and the reviewing court must examine all evidence relevant to the jurisdictional issue when ruling on a plea to the jurisdiction.

## F. PLEADINGS AND EVIDENCE BEFORE THE TRIAL COURT

In her original petition, Silvas made no mention of the notice required by the TTCA. Texana then filed a plea to the jurisdiction, asserting Silvas had "failed to allege that she provided Texana with a notice of claim against it within six months of the incident giving rise to the claim."

On April 5, 2001, Silvas filed her first amended petition which alleged the "Defendant had actual notice of the claim because the Defendant had knowledge of plaintiff's injury, of the defendants [sic] fault inn [sic] producing or contributing to the injury, and of the identify [sic] of the parties involved." That same day, she filed a response to Texana's plea to the jurisdiction, asserting "the notice given by Earnest [sic] Lechuga, as stated in his affidavit, complies with the notice requirements imposed by the Texas Tort Claims Act." However, Silvas did not file Lechuga's affidavit.

On May 21, 2001, Texana filed a motion for summary judgment in which it alleged, *inter alia*, that it had not received formal or actual notice, as required under the TTCA. In the motion, Texana acknowledged:

> there is a dispute in the evidence as to whether the Plaintiff verbally told Texana's representative, Johnny Hoelscher, of her alleged fall. The Plaintiff asserts that she told Hoelscher, and Hoelscher denies that the Plaintiff ever told him of the incident.

Texana argued that, even if Silvas's account was taken as true, the verbal notice she allegedly provided did not satisfy the notice requirements of the TTCA.

Attached as summary judgment evidence was the sworn statement of Ernest Lechuga, Silvas's former supervisor at Best Carpet Care. Lechuga stated that he had completed an "employer's first report of injury" on April 19, 1999, exactly six months after the date of the injury, in connection with Silvas's workers' compensation claim. Lechuga also said that Silvas had reported the injury to him "a couple of weeks" after it had happened, but that he did not tell anyone at Texana about the injury until after he filled out the April 19, 1999 report. Sometime after completing the injury report, Lechuga told John Hoelscher, a maintenance supervisor at Texana, that Silvas had fallen at Texana after slipping on a puddle of water in a leaky shower stall and hurt her knee.

As part of its summary judgment evidence, Texana also attached the affidavit of Hoelscher, who stated that he had learned Silvas was claiming an injury

> when I was told by Ernie Lechuga of Best Carpet Care after he completed the Employer's First Report of Injury. Ernie told me that Ms. Silvas claimed that she hurt herself and that she was making a workers' compensation claim. However, Ernie did not tell me the extent of Silvas's claimed injury, or that she had any intention of holding Texana responsible for any injury that she alleged that she received. Ernie also did not say anything to me to indicate that any injury that Ms. Silvas was complaining of was the fault of Texana. I did not receive any information that would suggest that I needed to conduct any investigation into the circumstances surrounding Ms. Silvas's injury, and I saw

no need to report this alleged injury to anyone else at Texana.

Hoelscher further stated that he had no notice of Silvas's claim against Texana prior to Silvas's filing suit against Texana in October of 1999.

Texana also attached an excerpt from Silvas's deposition, in which she testified as follows:

Q: Okay. Do you know the first time that somebody at Texana learned that you claim that they were responsible for your falling?

A: That I told them?

Q: Well, or that somebody told them for you, yes ma'am.

A: No. That same day, that same afternoon that I told John [Hoelscher] that there was water—and I used to wear shorts, so I also showed him the bruise on there. And I told him. And he says, "Well, go"—"I'll start taking care of that." And that was it.

Q: Okay. And what day is it that you told John that?

A: That same—the 20th.

Q: Okay. And I want to be clear I'm understanding exactly what you're telling me you told John. You told John there was water on the floor?

A: Uh-huh, yes, sir.

Q: Okay. Did you tell him you had fallen in the water?

A: Yes, sir, that I had slipped.

\* \* \* \* \*

Q: When you told Mr. Hoelscher that there was water on the floor in that area, you told him that you slipped there?

A: Yes, sir.

Q: And did you say you showed your bruise on your knee?

A: Uh-huh.

Q: Yes?

A: Yes, sir.

Q: And what did he say about that?

A: That I was going to be okay for the rest of the night there.

Q: Okay. Did you tell Mr. Hoelscher on the 20th that you felt that Texana was somehow responsible for your injury?

A: No. All I said was someone that-had left the water on again. They turned it off, but it was all over the threshold.

The record reflects that Silvas never filed a response to Texana's motion for summary judgment, and never adduced any evidence in support of her jurisdictional argument.

### G. NOTICE

In order to invoke the waiver of sovereign immunity provided by the TTCA, a claimant must provide the governmental unit with formal, written notice of the claim against it within six months of the incident giving rise to the claim. TEX. CIV. PRAC. & REM. CODE ANN. § 101.101 (Vernon 1997). However, the formal notice requirements do not apply if the governmental unit has actual notice of the claim. *Id.* The purpose of the notice requirement is to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). Compliance with the notice provisions of the TTCA is a prerequisite to a waiver of sovereign immunity under the Act. *Kreider,* 44 S.W.3d at 263; *Brown v. City of Houston,* 8 S.W.3d 331, 337 (Tex.App.-Waco 1999, pet. denied). Accordingly, failure to give notice under section 101.101 of

the TTCA precludes the waiver of sovereign immunity from suit. *Kreider*, 44 S.W.3d at 263.

 Actual notice to a governmental unit requires knowledge of (1) a death, injury or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury or property damage; and (3) the identity of the parties involved. *Cathey*, 900 S.W.2d at 341. To have actual notice, the governmental unit must have the same information it would have had if the claimant had complied with the formal notice requirements. *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 633 (Tex.App.-Corpus Christi 1988, writ denied). Mere notice that an incident has occurred is not enough to establish actual notice for purposes of the TTCA. *See Putthoff*, 934 S.W.2d at 173. The determination of whether a governmental unit received actual notice is a question of fact. *Alvarado v. City of Lubbock*, 685 S.W.2d 646, 649 (Tex.1985).

 After reviewing the evidence in the record, we conclude there are problems with Silvas's assertion of actual notice. In her response to Texana's plea, Silvas relied on an affidavit she allegedly obtained from Lechuga, but she did not produce the affidavit. Texana, however, did produce an affidavit from Lechuga as summary judgment evidence. According to the affidavit, Lechuga never told anyone at Texana about Silvas's fall or injury within the six-month period required by the TTCA. Lechuga advised Texana of Silvas's injury after the six-month notice period had expired.

In its motion for summary judgment, Texana addressed Silvas's claim that she gave Texana actual notice during a conversation she had with Hoelscher. Silvas testified in her deposition as follows:

Q: Okay. Did you tell Mr. Hoelscher on the 20th that you felt that Texana was somehow responsible for your injury?

A: No. All I said was someone that-had left the water on again. They turned it off, but it was all over the threshold.

Texana contends that, even if Silvas's version is taken as true, the conversation does not satisfy the requirement that Texana have "knowledge of ... the governmental unit's alleged fault producing or contributing to the death, injury or property damage." *See Cathey*, 900 S.W.2d at 341.

Assuming Silvas's statement to be true, we conclude it does not satisfy the three prongs required by *Cathey* for actual notice. While it does satisfy the first prong (knowledge of an injury), it does not satisfy the second prong (the governmental unit's alleged fault in producing or contributing to the injury) or the third prong (the identities of the parties involved). *See Cathey*, 900 S.W.2d at 341. Silvas specifically admitted that she did not tell Hoelscher how Texana was responsible for her injuries, only that "someone ... had the left the water on again." Because this constitutes no more than mere notice of injury, we hold it cannot suffice as actual notice sufficient to invoke the TTCA waiver of sovereign immunity. Accordingly, we hold the trial court erred in denying Texana's plea to the jurisdiction.

We sustain Texana's first issue. In light of our disposition of this issue, it is not necessary that we address Texana's second issue. TEX. R. APP. P. 47.1.

We reverse the trial court's order denying Texana's plea to the jurisdiction and render judgment dismissing this case for lack of subject matter jurisdiction.